May it please the court, counsel. I'm Tom Showmaker. I'm a lawyer from Omaha, Nebraska. I was admitted pro hoc vicee to assist with a lawyer named Cherie Raymond, who is a South Dakota lawyer. She's the one that wrote all the briefs and I think laid out all the positions that I'm here to articulate or try to. I'll just try and hit the high note that I hope that we can consider here today. We're asking you to undo what happened in this jury trial. Tort damages were given to the plaintiff, Linda Miller, on a contract theory. And I think that's your argument. Pardon me? That's certainly not the way the case was submitted to the jury. It was submitted both on contract and defamation. And those were the two causes of action. When you just said tort damages, you were not counting the death. You were, I thought, picking up on the argument in the brief that this is using 347 of the restatement to award tort damages for breach of contract. Well, I think that we're wondering how you can have a breach of contract, which we lose, and then a defamation case, which we win, and then the jury winds up giving all those damages that are available only under defamation. But wait a minute. That was consistent with the anguish was taken away. Correct. With the understanding and agreement of all the lawyers that it would be handled that way. The jury was not given two different damage verdicts, was it? Yes. It was given a two... Well, it was given two different liability verdicts, but it was given three packages of damages that had awarded on both counts. Correct. And maybe that shouldn't have gone down that way, but I don't think it's... Well, that's way... I don't think it is, Your Honor. Why not? I mean, one of the issues as I looked at it, you're looking at, there's a claim that consequential damages ought not to be recovered under South Dakota law. And South Dakota law, like North Dakota law, appears to somewhat have conflated consequential damage theories. And they've looked at the... I agree with you that the tortious breach of tort damages in contract cases is improvident. But it does appear that under South Dakota law, that they have had a history of allowing all naturally flowing damages to be recoverable, which is an awfully broad statement. And broader than what you ordinarily see in damage restatements for contract claims, right? Now, at that point, isn't behoove you as a lawyer who's representing a defendant to say, clearly defined, and I want the tort damages calculated separate from the contract damages? And instead, what happens in this case is the issue is raised, and it's raised as to mental anguish. And there's a discussion about the future damages, future earnings capacity, but it's never nailed down. And at the end, the answer is, okay, we'll leave it to you, Judge. Well, that seems to me pretty much like a waiver of those claims at that point. Why not? Because it would be unfair and contrary to South Dakota law. You cannot... I mean, if you do that... You mean bad wound now? I mean bad wound... Flipping to bad wound. Bad wound and... Forget the defamation. We're talking... You got to differentiate what you're talking about, because you want to blur this, the seeming illogic of the two... Or the seeming inconsistency of the verdicts. You want to mush that all together on appeal and get a reversal somehow. But I want to distinguish between the bad wound argument and your view of the defamation inconsistency. Thank you, Your Honor. I'll try. And I think that the mushing together kind of is what happened when the verdict came in. Sure, that was by... That was, as Judge Erickson points out, what the lawyers agreed was going to happen here. Well, we agreed, and then I was thinking about this. The jury instructions that were given are legitimate jury instructions. How did they define lost wages? Well, they just... In the instruction that was given to the court on the breach of contract, it's that an enforceable contract, that she breached the contract, and there's what damages flow from that breach. And then that's kind of empty. It's open. But everybody talks about we had $500,000 or $600,000 in lost wages damages. In the future. In the future. Because remember, Your Honor, this contract was really at once the 180-day... Let me tell you my problem with your bad wound argument. Let's suppose that the same contract, three-year term, renewable obviously, had a provision saying that 30 days before the end of the term, if the employer decides not to renew the contract, the employer shall provide the employee with an accurate performance summary of the employee's performance over the term of the contract, which the employee may then use with prospective employers. Okay. And the employee said at the end, I'm not giving you that because you want to work for my competitors. Now, under your interpretation of bad wound, the awardable damages, as I read your argument, is zero. That's a freebie, that breach of contract. Well, it's a freebie in the sense that we fully paid her for what she would have received if the contract... No, you breached a serious commitment in the contract. Correct. We should have given her a hearing. She should get damages under South Dakota law as defined in Lamar. She should get the damages caused by that breach, which obviously don't begin until the end of the term of the contract. Judge, respectfully, if... Give me a case that's contrary to what I'm positing. I guess I'm saying if that's the thinking, then anything that flows after the breach of a contract, I went home and got dust mites in my house because I wasn't at work, you owe me for that. Or I got mentally ill because I was so upset about not being hired. That's all... We'll just put that under the breach of contract. I think, Your Honor... Wait a minute, hold on. Under a breach of contract theory, the damages that would ordinarily be recovered just at common law would be those that are either within the contemplation of the parties at the time that the contract is entered into, or reasonably foreseeable from the breach of the contract. And here's the thing, if you breach this contract in the fashion that's alleged in this case, and the jury obviously found that that breach had taken place, and the jury obviously found that these damages flow naturally from it, why are they not just ordinary damages that were foreseeable at the time that the contract was entered into? Because of the statute in question here, 21-1-5, kind of defines what you can get. No person can recover a greater amount of damages for a breach obligation than he could have gained by the full performance thereof on both sides. And I've looked for different laws in different states. But the breach was of the bylaws, right? The breach was of the bylaws, but it is limited by the term of the contract that she had in the Surgical Services Agreement. Take my hypothetical. Pardon? Take my hypothetical. My hypothetical fits with that. That statute does not interfere with post-term damages in my hypothetical at all, because it's the damages that flow from the failure to perform the last provision of the contract, which is don't interfere with the, or assist the employee to get a new job. If that's the case, if we're going to accept that, and that's where you're going, why aren't we not immune under the HICWA for these damages? Oh, well, now we jump the gap to the other half of the... Well, if we look at the context of this... ...anywhere that would apply your interpretation of bad wound to my hypothetical and say that is a freebie breach of contract. Well, Your Honor, perhaps I'm not understanding your hypothetical correctly, but I think that bad wound and the Goal case that followed from that, and even the Lamar case, are all cases that say the limitation of the term of the contract puts a fence on where those damages are going to go. But this is a renewable contract. But it has to be renewed. We didn't have to renew it. That's where you say that. It sounds good. It fits your case. Well, but, Judge... It doesn't fit my notion of approximately caused contract damages. If I'm a baseball player, and I have a five-year contract, and the five-year contract comes up, I may renew it, I may not. The team may renew it, may not. The contract says we promise not to blackball you in the Major League Baseball if we don't renew your contract, and that's what the team does. Now, any damages from that explicit breach would be post-term. And if they are, they're totally rejected by the immunity theory. The jury found we did not defame Dr. Miller. That was their finding. Forget defamation. I'm talking about a breach of the contract. We promise we will not criticize your, you know, we will not blackball you. Forget about it. Blackballing isn't the only defamation. It can happen a lot of different ways. Well, I think, Your Honor, with all due respect that these are, you're talking about, we won't defame you. If that's what you're saying, then we're jumping into the total immunity that we have under HCQA, and we have the victory. Why can't the jury decide this breach of contract was not defamatory, but it was a breach of reasonably foreseeable post-term damages? Because those damages are not available under South Dakota law under the breach of contract. Now, we're back on the my side of the gap. Well, but give me a case from anywhere, much less South Dakota, that says that an explicit breach of contract of any kind cannot result in post-term damages if it's an employment contract for a fixed term. I'm looking for a case, and I'm waiting for my opponent to cite a case that stands for the proposition on the other side. Where is the case that says you breach a contract, but you can have future wages, you can have future loss? Well, but here's the thing, is the ordinary breach of a contract claim, and I get where you're coming from. Ordinarily, if you breach a contract of employment, the damages are available for the term of the contract, right? But here's a separate kind of a claim. What they're saying is that the breach of the contract was what? The breach is you were not afforded the process required under the bylaws. And the jury necessarily found that that was true. The second thing the jury necessarily found was that that breach caused consequential losses that included lost earnings capacity and lost future earnings, right? They did. Erroneously, I'm arguing, or trying to. But here's the thing. What would be the remedy otherwise for this breach of this contract, right? I mean, because if you look at, you say, well, it's really defamation. Well, it's not defamation. Defamation is an intentional tort, and it requires knowledge, all right? What they're saying here is that maybe you didn't have the knowledge, but you also didn't provide the process. And because you didn't provide the process, which would have yielded a separate result, these contract damages flow. That is, I've suffered a loss because you've breached that contract. Well, I guess we get back to my main argument. If this court upholds this verdict, I think we've gone into a new place in which you can have a contract, but somehow you're going to get all kinds of consequential damages. But aren't you conflating the surgical agreement with the bylaws? Well, Your Honor, what is the purpose of the surgical agreement but to define the term of the employment? But that wasn't how it was presented to the jury. It was that there was a violation of the contract, which was the bylaws, that then resulted in harm to her, maybe as a result of the report, which opens up your other argument about immunity. But I'm not seeing why you have to conflate those two and keep them as a package. I don't think the jury saw it that way. I don't think they saw it that way. Or that I don't know that it was presented that way. Well, we still have to come down to what are the facts and what is the law. And as I look back on this, I'm wasting all my time. Can I just please retain the last minute and a half for any rebuttal? You're in control of your time. You can cut off an answer of a question. I wouldn't ever do that. I'd like to stop right now and save for rebuttal. Thank you very much. Mr. Barker? How were lost wages defined for the jury? Your Honor, lost wages were defined in this way. They were defined as past loss wages and future loss earnings. To support those damages, we presented the testimony of our economist, Don Frankenfeld, who calculated that there were 5.6 years in the past that Linda Miller lost in terms of lost earnings and that she lost 7.26 into the future. So it was a definite term. To get to the point is... So the jury was... The jury found that she would have worked for seven years past or four years past the end of the term for a year on regional center? Precisely, Your Honor. That was the evidence that was presented. And the foundation for that evidence was presented through primarily three witnesses. Those witnesses were, first, Dr. Huntoon, who talked about the Shampoo Review and what the effect of an adverse action report has filed into the data bank. The second was from Carol Carnes, who was an expert in doctor recruitment and placement, who said that in recruiting a doctor, an adverse action report has a profound effect on a doctor's reputation. We're talking here about a professional license. We are not talking about an employment contract. So then you're talking about the damages that flowed from the filing of the report. Am I right? Judge Kelley, that is exactly right. The contract that was formed by... But your claim is flatly contrary to Badwound. If it is for wages paid that would have been paid by Huron Center four years past the explicit term of the contract. I don't see how you get there around Badwound for that. You don't. Badwound doesn't apply. That's why I agree with you entirely. Badwound doesn't control this case. Judge Schreier said the same in her order denying... But she didn't say why. Well, yes, she did. I didn't understand why. With all due respect, Judge Loken, she did. She said that this is why Badwound doesn't apply. First off, it was for a definite term. That is, Badwound was for a definite term, three years. And we did not sue under the Surgical Services Agreement. That is getting confused with our breach of contract. The Surgical Services Agreement is a contract between Dr. Miller and the hospital for services that she's providing under the hospital. I get that. I'm sorry. That's okay. Go ahead. But here's my issue at that point. If it's not for the breach of the surgical agreement, it's not for the breach of the contract, but instead it's the process violation, right? And then all of a sudden I'm going to ask you like, why isn't there immunity? Because at this point, if there's no showing that they acted in bad faith, and there was obviously no showing of knowledge, otherwise the defamation verdict's inconsistent with the contract burden unless it failed on knowledge, right? And so if there's no bad faith and there's no knowledge, how come they're not immune? The reason why they're not immune is because the breach of contract and the consequential damages that flow from it have nothing to do with ICWA immunity. And that is, ICWA immunity, what the statute says, what ICWA says is that you cannot find liability based upon ICWA. But it doesn't say anything about the damages that may flow from the filing of an adverse action. It's not based upon. The statute uses a much broader term than that. Can you really divide up liability from damages like that? Well, what else would liability mean except the damages? Judge Kelly. With respect to any report. Okay. That's as broad as, you know, related to or any word in any statute. I think I can answer both questions with this statement. If it is true that ICWA provides immunity on the breach of contract claim, then here in the regional or any other hospital can violate the terms of a bylaw contract in South Dakota. And there is absolutely no consequences as a result of it. Because if you... Not if you prove they aren't entitled to the no knowledge. Well, but... Critical component of immunity. A critical component of immunity if there was a defamation claim. But the underlying claim is the breach of contract claim. And that is that because they violated the bylaws, they did not provide Dr. Miller any due process at all. What they did is they set her up during an eight month process that began in August of 2010. They set her up. The board of directors met and they got to talking among themselves. And the facts were that they talked about a couple cases. This is mostly a lay board. Well, would there be other damages that might flow from the denial of that kind of process other than the filing of a report such that a person in that position would not be without any recourse? If defamation would be... And the jury found in this case that there was mental anguish and ordered $250,000 on that claim. Of course, we had to give that up. But the answer to that question is yes. But the answer to the question as to contract damages, the answer is no. We're confined to what she would have earned for the... But maybe I'm not asking it right. But if the damages flow entirely from the filing of the report, the plain language of the statute strongly suggests that there's immunity there. But what I'm asking is, would there be other kinds of damages someone like Dr. Miller might suffer from the denial of the procedural process due her in that course of that that would not be related to the report? Conceptually, but those issues weren't put before the jury. It was only the breach of contract and her loss of earnings. Was the immunity ever asserted by Huron regarding the contract claim prior to the appeal? No, it was not. And that's our point, is that unless there's plain error, this court must affirm the district court, Judge Schreier's order, denying new trial and remititure. Because there wasn't a compliance with Rule 50 and Rule 51. Those rules mean something. That is, it's that those rules say that you have to make an objection so that the other side has an opportunity to defend that issue. And there was never summary judgment or a motion for a directed verdict on the evidence. And as a result of that, the motion really before the court on that issue is under Rule 59. But 59, a prerequisite to Rule 59, first you have to make a record. And there wasn't any record. When this was presented to Judge Schreier, if I'm remembering correctly, she concluded that the damages from the breach of the contract, the bylaws, was as a result of the filing of the report. Am I right? That is correct. So that was in front of the parties at that time? It was in front of the parties. Did she identify any other damages other than from the filing of the report? Not on the breach of contract claim, if that answers your question, Judge Kelly. So as a result of the Board of Directors of Huron Regional getting together, they began a process in violation of the bylaws where they did a first, a three-month investigation of Dr. Miller, reviewing all of her cases. She was told about it after the fact. They reviewed 100% of her cases and found nothing wrong. So they decided, send the MEC, the Medical Executive Committee, back to the drawing board and we're going to do another three months. At the end of those three-month period, there were two cases that drew concern, or at least concern of the Board of Directors of the Corporation of Huron Regional. And so they had a discussion with her. And that discussion was through Dr. Blessinger, the Executive Director of the Medical Executive Committee. And Dr. Blessinger said, give up your rights or you're going to get fired. You know, we get the facts, and it seems like, as the jury could have found, the center didn't behave very well. But that's not what we're talking about. And I don't understand, weren't the bylaws an implicit or a part of the contract? Absolutely. So when you say we didn't sue under the surgical agreement, I don't understand that. Well, because a surgical agreement is a separate contract. It's a services agreement with the hospital. The bylaws encompass a professional license. When I said it was part of the contract, I meant part of the surgical agreement. Well, all of the... The agreement was there other than the surgical agreement that the bylaws were, that incorporated the bylaws. The bylaws are the only portion of that contract that affects professional license. Right, but it's got to be incorporated to the employment relationship through the surgical agreement, doesn't it? Judge Erickson, absolutely. In fact, we've said that in our briefs, that not only the surgical agreement, not only the bylaws, but the rules and regulations. Those three documents comprise all of the contract. The portion of it that we alleged that they violated were the bylaws for the reasons that you understand from the facts. And that was, is that Dr. Blessinger said, you shall give up your privileges, your professional privileges, or you're going to be fired. And this will prevent you, and this is important, this will prevent you from having a adverse action report filed with the National Practitioners Data Bank. Was everyone in agreement that these would be considered separate contracts? Or was this presented at trial as the bylaws being one portion of this bigger contractual arrangement? All three segments of the contract were presented, Judge Kelly, as part of her contract. We didn't, we discussed all three of them. We can tell you that the surgical services agreement, though, was really ancillary in terms of the evidence that we presented because we said this is the document, the bylaws, that affect her professional reputation. And as a result of the filing of the adverse action report, which is in the medical profession of Scarlet A, she would be affected. We presented three witnesses, actually four witnesses. But I'm for bad wound. I don't understand how you can say bad wound doesn't apply because we didn't sue under the surgical agreement and then we sued under the by, for breach of the bylaws and then admit that the bylaws were part of the relationship, contractual relationship. So bad wound does not apply for the reasons I previously stated, but also you have to reconcile bad wound then with Lamar advertising versus heavy constructors. Principle. But here's the thing, and I just keep struggling with this whole thing. First of all, why is this not a damaged reputation case? And all over the country, people have said those are speculative. And your opponent has asked, do you have a case that has awarded in a pure contract context future earnings loss and or future wage loss and earnings capacity loss? And the answer is we don't have a case that is precisely on point, but the Lamar advertising versus heavy constructors and the O'Brien case. It was not an employment agreement and did not even cite bad wound. It stated the general principle, which Judge Erickson recited to opposing counsel this morning. We're not debating that that's the general principle, but we're debating how it applies to this breach of an employment agreement from the standpoint of damages that are awardable. And if you had said, my hypothetical would have been, would have said, you would have said, you would have defined lost wages as the inability to obtain successive employment by reason of the breach of in my hypothetically promise to provide successive employers with an honest appraisal of performance. Right. Okay. But when you don't say this, what you say is we get four more years of damages as though the center continued to employer. And that to me is bad one. Excuse me. We don't think that bad wound applies, Your Honor. And it's distinguished. But I don't understand why. Because Lamar says this, this court doesn't cite bad. They're parallel tracks. They are unparalleled tracks. But just think about this for a moment. If we just step back and look at contract law generally, and you just start thinking, you know, the kind of damages that you're claiming here in ordinary contract context, usually are presented as torts, bad faith, malicious deprivation of a contractual right or something, torts is breach of contracts, right? Which, you know, states have recognized, although it seems a kind of a weird theory to me. But that's not what happened here. What's happened here is you say, there's a clear breach of the contract and these damages flow naturally. Yet there's a whole body of cases out there that say these are damaged reputation cases and they're speculative. Why is that wrong? Because it's the damages that are foreseeable. And I think when opposing counsel was up here, you used that word. And I think it goes back to our law school days when back to Blasingale, when anything that is a consequence of the foreseeable damage of the harm done, even in a breach of contract case, right? And that's a basic principle that contract damages include those damages which are foreseeable. And we presented adequate, ample evidence through the expert witnesses and it wasn't refuted. And the important point here is, is that there wasn't a record made to object to it so that we could somehow correct an error if there was one. And so this is not a plain error case. And so what we're asking for, Judge Erickson, I hope I've answered the questions of the other two judges as well, is that these are foreseeable damages. I see my time is out. I don't understand why if the jury could not award what you claim they awarded for lost wages, four years of pay from medical center after completion of the three-year term of the unrenewed agreement. If that was a mistake of law under bad will, why is there somehow a rule 50 or rule 59 failure here? It's not a mistake. It's because- Instructed to violate bad will, they just did it. No, because bad will doesn't apply to the facts and circumstances. I know we have- That forget, then I can forget your rule 59 argument. Okay. Well, I think you still have to make an objection under rule 50 and propose an instruction, a contrary instruction under rule 51 and that wasn't done. Contrary to what? If the instruction was simply the general rules for breach of contract and no one asked for, requested an instruction specific to bad will and the jury gives an award that violates the legal, the law as established in bad will, then the verdict, there has to be a new trial or something or a meditor or something in there. At its core, the answer is no. At its core, that statement and the defense's argument is that there are no consequential damages that flow from a breach of contract and that simply is not the law. Is that really what they're arguing or aren't they arguing instead that the consequential damages that were awarded in this case are so remote, so as not to have been within the contemplation of the parties or reasonably foreseeable or thirdly, speculative? I'm happy to entertain that thought because if it was, they still had to make a record and present evidence. They had the opportunity to cross-examine Judge Erickson extensively and I can tell you, there's very capable counsel sitting at that other table and they did have an opportunity to cross-examine and the jury did consider and weigh what the right thing to do is and what is the truth and they decided to approve damages in the amount that they did, slightly in the neighborhood of $800,000 or $900,000 in addition to the fact that they also said that there was mental anguish which of course we couldn't keep and interestingly, they also sent a note back to the judge asking if they could award punitive damages on a breach of contract which of course was handled in the appropriate fashion but that tells you that the jury certainly saw in this case that justice was not done and that justice was to be served. That's all I have. Thank you. May it please the court, in my last one minute and 23 seconds, I'd ask the court to keep that same collective mindset that we had when my opponent was arguing as I make this final plea to you. When this case was, the jury came back with this verdict, it was only at that time that we got into this what I call a piggyback theory of the breach of contract that the plaintiff won on now embraces everything else. This is really not the law, shouldn't have happened and again, we have immunity. There's no question if we're not defaming Dr. Miller, we have HICWA immunity. There were a lot of discussions about the facts in this case and now wait a minute, wait a minute. The breadth of some of the arguments made this morning, the immunity is without knowledge of the falsity of the information contained in the report. The immunity, that is much broader than defamation. There is knowledge of false information that would not be defamatory. Would not, the concealing of which would not be defamation. So if you can't link defamation to the immunity provision. I think when the jury says we didn't defame her, then how do we not get immunity? Where's the finding that we falsely and knowingly falsely did something to the data bank? We didn't do it. And you know, we've talked a lot about the facts or the plaintiff did, I have not. The immunity statute read to the jury. Was it in prior to the instructions? No, it was not. And it's what the plaintiff is asking for now is when there's a plaintiff's verdict on the breach of contract, that somehow we're going to get all of these damages. And we had no way of knowing they were going to make that claim until after the verdict came in. But what about their claim that it was that you you waived because you didn't raise it in your post trial motions? I don't know how to what extent the record's going to show that we did object and insist on immunity because I don't want to mislead the court on that one. But I can tell you our position is that we don't know about this defamation damages linked with a breach of contract. Well, you didn't know that till you got the verdict form. I get that once the verdict is back and you look at it and you know that that's what happened. At that point, at any point, did you raise the issue of saying, hey, hold on, wait a minute. We're immune if these are the damages. We said, hold on, wait a minute. But I don't know. I can't know the record well enough to tell you exactly how we put that. But I would say this, Your Honor, no matter what, the statement of the law that I think we're here about is that a breach of contract is pretty well defined in South Dakota. It's limited and it should only stay within those limits. And what happened here is something outside of it. As we look back, every case I've ever done, I think, why didn't we do this? Why didn't I do that? Why didn't we do this? There's a lot of that. There's a lot, a lot of that. But still, there's some legal principles. I just ask for your consideration about that. And thank you very much. Thank you, counsel. The case has been thoroughly briefed and argued and raises interesting and unusual issues. And we'll take it under advice. Thank you. Please call the next case. This is Todd Borchardt at Alvey State Farm Fire and Casualty Company.